The Honorable Don Sallee State Senator, First District Route 2, Box 79 Troy, Kansas 66087
Dear Senator Sallee:
As senator for the first district, you request our opinion regarding whether prayer may be conducted during school functions. Specifically, you ask whether there are any instances in which prayer in school is allowed. You also ask whether the fact that the pupils rather than the school administration request that prayer be included in the school programs or ceremonies affects the ability to include prayer in school functions.
The issue you raise necessitates consideration of the decision of the United States Supreme Court in Lee v. Weisman, ___ U.S. ___,112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), and a subsequent decision of the United States court of appeals for the fifth circuit.
In Lee, "[t]he sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as [found by the court], young graduates who object are induced to conform."Lee, 112 S.Ct. at 2661. Under the facts of the case, a school official: decided that an invocation and a benediction should be given; chose the religious participant who was to give the invocation and benediction; and directed and controlled the content of the prayer. 112 S.Ct. at 2655-56. While the parties stipulated that attendance at the graduation ceremonies was voluntary, 112 S.Ct. at 2653, the court determined that the choice of a graduating high school student to not attend graduation ceremonies "is formalistic in the extreme." 112 S.Ct. at 2659.
 "A school rule which excuses attendance is beside the point. Attendance may not be required by official decree, yet it is apparent that a student is not free to absent herself from the graduation exercise in any real sense of the term `voluntary,' for absence would require forfeiture of those intangible benefits which have motivated the student through youth and all her high school years." Lee, 112 S.Ct. at 2659.
These dominant facts mark and control the confines of the court's decision. Lee, 112 S.Ct. at 2655.
The court then determined that the degree of school involvement "made it clear that the graduation prayers bore the imprint of the State and thus put school-age children who objected in an untenable position."Lee, 112 S.Ct. at 2657.
 "We need not look beyond the circumstances of this case to see the phenomenon at work. The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the Invocation and Benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion. . . . [F]or the dissenter of high school age, who has a reasonable perception that she is being forced by the State to pray in a manner her conscience will not allow, the injury is no less real. . . . It is of little comfort to a dissenter, then, to be told that for her act of standing or remaining in silence signifies mere respect, rather than participation. What matters is that, given our social conventions, a reasonable dissenter in this milieu could believe that the group exercise signified her own participation or approval of it.
"Finding no objection under these circumstances would place objectors in the dilemma of participating, with all that implies, or protesting. We do not address whether that choice is acceptable if the affected citizens are mature adults, but we think the State may not, consistent with the Establishment Clause, place primary and secondary school children in this position. . . . To recognize that the choice imposed by the State constitutes an unacceptable constraint only acknowledges that the government may no more use social pressure to enforce orthodoxy than it may use more direct means." Lee, 112 S.Ct. at 2658-59.
The United States constitution forbids the state to exact religious conformity from a student as a price of attending the student's own high school graduation. Lee, 112 S.Ct. at 2660. The conformity required of the student in this case was too high an exaction to withstand the test of the establishment clause. 112 S.Ct. at 2661.
Subsequent to its determination in Lee, the United States Supreme Court vacated the decision of the fifth circuit court of appeals in Jones v.Clear Creek Independent School District, 930 F.2d 416 (5th Cir. 1991) (Jones I), and remanded the case for further consideration in light of the decision of the court in Lee. Jones, 505 U.S. ___, 112 S.Ct. 3020,120 L.Ed.2d 892 (1992). In Jones v. Clear Creek Independent SchoolDistrict, 977 F.2d 963 (5th Cir. 1992) (Jones II), the court of appeals acknowledged that the United States Supreme Court in Lee did not apply the tripartite test of Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105,29 L.Ed.2d 745 (1971), but instead applied a coercion analysis. Jones II,977 F.2d at 966. The court of appeals then applied the five tests established in Lemon and Lee to the facts in Jones II.
At issue in Jones II was a resolution of the Clear Creek independent school district permitting public high school seniors to choose whether nonsectarian, nonproselytizing invocations should be included at their graduation ceremonies and to choose student volunteers to give such invocations. The tripartite test of Lemon requires that, to satisfy the establishment clause, the government action must: (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. at 2111. The court of appeals determined that "the Resolution has a secular purpose of solemnization, and thus satisfies Lemon's first requirement." Jones II,977 F.2d at 966.
In applying the second prong of the Lemon test, the court of appeals acknowledged that three points enunciated in Jones I as showing the primary effect of the resolution to be solemnization of ceremonies were rejected in Lee. The court of appeals, however, continued to hold that the primary effect of the resolution was solemnization of the graduation ceremonies.
 "The fact that Lemon only condemns government action that has the primary effect of advancing religion [cite omitted] requires us to compare the Resolution's secular and religious effect. The Resolution may or may not have any religious effect. The students may or may not employ the name of any deity; heads may or may not be bowed; indeed, an invocation may or may not appear on the program. If the students choose a nonproselytizing, nonsectarian prayer, the effect may well marshall attendees' extant religiosity for the secular purpose of solemnization; but no one would likely expect the advancement of religion by the initiation or increase of religious faith through these prayers. The Resolution's primary effect is secular." Jones II, 977 F.2d at 967 (emphasis in original).
The resolution was found by the court of appeals to satisfy the second prong of the Lemon test.
It was unclear as to whether the resolution required school officials to review proposed invocations for sectarianism or proselytization.Jones I, 930 F.2d at 422-23, fn. 4. Even if such review was required, the court of appeals found no entanglement. "We know of no authority that holds yearly review of unsolicited material for sectarianism and proselytization to constitute excessive entanglement." Jones II,977 F.2d at 967. As the resolution kept the school district free of all involvement with religious institutions, 977 F.2d at 978, the final prong of the Lemon test was held to be satisfied.
The court of appeals then considered the two tests set forth in Lee. "From the Court's various pronouncements, we understand government to unconstitutionally endorse religion when a reasonable person would view the challenged government action as a disapproval of her contrary religious choices." Jones II, 977 F.2d at 968. The court of appeals once again noted that the resolution does not mandate a prayer or invocation; it merely permits one if the students so choose. Id. "[A] graduating high school senior who participates in the decision as towhether her graduation will include an invocation by a fellow studentvolunteer will understand that any religious references are the result of student, not government, choice." 977 F.2d at 969 (emphasis in original). Citing Board of Education of Westside Community School v.Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1991), the court of appeals noted "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private
speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." Jones II, 977 F.2d at 969 (emphasis in original). Because of the students' participation in deciding whether a prayer or invocation would be included in the graduation ceremonies and the maturity of the students, the resolution did not result in unconstitutional endorsement.Id.
The court of appeals then turned to whether the resolution resulted in unconstitutional coercion on the part of the school district. "Lee
identifies unconstitutional coercion when (1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors." Jones II, 977 F.2d at 970.
Under the resolution, the role of the school district was not to decide whether a prayer or invocation would be given, but rather to respect the decision of the graduating class regarding whether a prayer or invocation would be included in the graduation ceremonies. Jones II, 977 F.2d at 970. The school district played no part in selecting a person who would deliver the prayer or invocation. The prayer or invocation was required to be nonsectarian and nonproselytizing. The resolution neither required nor favored the giving of a prayer or invocation. The maturity level of the students involved and the fact that they participated in the decision-making resulted in less psychological pressure on the students as the students "are aware that any prayers represent the will of their peers, who are less able to coerce participation than an authority figure from the state or clergy." 977 F.2d at 971. Based upon these findings, the court of appeals determined that the resolution did not unconstitutionally coerce objectors into participation. 977 F.2d at 972.
As the resolution was found to survive the scrutiny of the five tests applied by the court of appeals, the court found the resolution did not violate the establishment clause.
 "[T]o experience the community's recognition of student achievement, they must attend the public ceremony that other interested community leaders also hold so dear. By attending graduation to experience and participate in the community's display of support for the graduates, people should not be surprised to find the event affected by community standards. The Constitution requires nothing different." Jones II, 977 F.2d at 972 (emphasis in original).
Rehearing of the case was denied, Jones v. Clear Creek IndependentSchool District, 983 F.2d 234 (5th Cir. Tex., December 28, 1992), and petition for certiorari was filed, Jones v. Clear Creek Independent SchoolDistrict, 61 USLW 3684 (No. 92-1564 March 26, 1993).
Upon review of Lee and Jones II, it is our opinion that the court of appeals for the fifth circuit has failed to recognize the coercive effect which will occur following an affirmative vote of the students pursuant to the resolution of the school district. The fact that students have the opportunity to vote on whether a prayer or invocation will be included in graduation ceremonies does not permit a school district to include a prayer or invocation in graduation ceremonies without violating the establishment clause.
Despite the fact that students have voted to include a prayer or invocation in the graduation ceremonies, the graduation ceremonies continue to be a school-sponsored activity. School officials continue to participate in the graduation ceremonies and exercise extensive control over many aspects of the ceremonies. The prayer or invocation may be only a small segment of the graduation ceremonies; however, a vote by the students does not alleviate the fact that students will be subjected to subtle coercive pressures. A student under such circumstances has no real alternative which would allow the student to avoid the fact or appearance of participation.
 "The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the Invocation and Benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion." Lee, 112 S.Ct. at 2658 (emphasis added).
Within the school context, it would appear that the state continues to direct a formal religious exercise in such a way as to oblige the participation of objectors. The court of appeals for the fifth circuit provides that "[b]y attending graduation to experience and participate in the community's display of support for the graduates, people should not be surprised to find the event affected by community standards." JonesII, 977 F.2d at 972. This misses the point of the establishment clause.
 "While in some societies the wishes of the majority might prevail, the Establishment Clause of the First
Amendment is addressed to this contingency and rejects the balance urged upon us. The Constitution forbids the State to exact religious conformity from a student as the price of attending her own high school graduation. This is the calculus the Constitution commands." Lee, 112 S.Ct. at 2660.
Therefore, inclusion of a prayer or invocation at school-sponsored graduation ceremonies results in a violation of the establishment clause despite the fact that students may have affirmatively voted to include the prayer or invocation in the graduation ceremonies.
It should be remembered that "Lee identifies unconstitutional coercion when (1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors." Jones II,977 F.2d at 970. Although it may fly in the face of tradition for a school district to cease conducting graduation ceremonies, it would appear that non-school sponsorship would be required before a prayer or invocation may be included in graduation ceremonies. Under such circumstances, any graduation ceremonies would be conducted by a private group or organization independent of the school district and the ability of school officials to supervise or participate in the graduation ceremonies would be minimized. Because the graduation ceremonies would be conducted by a private group or organization, no state action would be involved. The establishment clause would be inapplicable under such circumstances.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas