Anastasia **GEARON, et al., Plaintiffs,**

v.

**LOUDOUN COUNTY SCHOOL BOARD, et al., Defendants.**

Civ. A. No. 93–730–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 22, 1993.

---

Victor M. Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, for plaintiffs.

E. William Chapman and Harry W. Mulford, Hazel & Thomas, P.C., Leesburg, VA, for defendants.

## MEMORANDUM OPINION

BRYAN, District Judge.

The issue in this action is whether the defendant, Loudoun County School Board (the School Board), and its Division Superintendent and the principals at the four high schools in Loudoun County, Virginia, violated the Establishment Clause of the First Amendment by permitting certain remarks made by students at high school graduation ceremonies in the Spring of 1993.

When originally brought, prior to the June 24, 1993 graduation ceremonies in all four high schools, the plaintiffs obtained from the district court on June 21, 1993, a preliminary injunction. That injunction was lifted by the United States Court of Appeals for the Fourth Circuit on June 23, 1993. The action is now before the court for a decision on the merits. Although the matters initially giving rise to the action concerned the 1993 spring graduation, which obviously has passed, the defendants seek to follow and the plaintiffs resist following the same procedures in the future. No party suggests the controversy is moot.

Commendably the parties have entered into a comprehensive Stipulation of Facts, although the defendants have objected to the relevance of some of the facts stipulated. The stipulation and affidavits, by agreement of counsel, allow the court to avoid holding an evidentiary hearing. Similarly, because extensive oral argument was heard on both the application for the preliminary injunction and the recent motion for summary judgment filed by the defendants, the parties have waived oral argument, submitting instead proposed findings of fact and conclusions of law.

The position of the parties in this matter may be summarized, perhaps over-simplistically, as follows:

The defendants assert that the remarks delivered were student-initiated, student-written and student-delivered, and, therefore, lacked the pervasive government involvement condemned in *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), and *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1970). They rely heavily on *Jones v. Clear Creak Independent School District,* 977 F.2d 963 (5th Cir.1992). They also assert the students' purpose in the remarks was to "solemnize" the graduation ceremonies, and that such a purpose does not run afoul of the Establishment Clause; and that the prayer at issue neither advances nor inhibits religion.

The plaintiffs, on the other hand, primarily argue that prayer in graduation ceremonies is per se unconstitutional regardless of the manner in which the decision to have prayer is made and how the prayer is presented. Plaintiffs rely on *Lee* for the proposition that, at the secondary school level, it is offensive to the Establishment Clause for the state to place students in a coercive setting where their options are to (1) not attend their graduation, (2) attend and be disruptive, or (3) attend and participate in the ceremony regardless of their objections to the religious nature of the ceremony. Plaintiffs further argue that the state sponsorship of a graduation ceremony cannot be insulated from government entanglement by delegating to a majority of the members of the graduating class the decision whether prayers are to be included.[1]

As their secondary position, the plaintiffs assert that under the circumstances of this case there is excessive governmental entanglement with the religious aspect of the graduation ceremony, the action of the defendants does not reflect a clearly secular purpose, and the affect thereof is to advance or inhibit religion. Thus, on these facts, the Establishment Clause is violated. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

▮ The court is persuaded that the correct view is the one represented by plaintiffs' primary argument, i.e., a constitutional violation inherently occurs when, in a secondary school graduation setting, a prayer is offered, regardless of who makes the decision that the prayer will be given and who authorizes the actual wording of the remarks. Alternatively, the court agrees with the secondary position of the plaintiffs.

The degree of state sponsorship of the prayer at issue in *Lee* made it an "easy" case.[2] Even so, the broad principles set forth by the Court concerning the coercive pressures, peer and public, on dissenting stu-

dents were an essential part of the Court's decision and cannot be ignored.

In *Lee*, the Court noted that the efforts by school officials in their directions for the contents of the prayers "were a good faith attempt by the school to ensure that the sectarianism which is so often the flashpoint for religious animosity be removed from the graduation ceremony." *Id.* —— U.S. at ——, 112 S.Ct. at 2656. As pointed out by the Court, however:

> The question is not the good faith of the school in attempting to make the prayer acceptable to most persons, but the legitimacy of its undertaking that enterprise at all when the object is to produce a prayer to be used in a formal religious exercise which students, for all practical purposes, are obliged to attend.

*Id.*

The *Lee* Court continued the discussion of the coercion accompanying high school graduation:

> The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the Invocation and Benediction.

*Id.* at ——, 112 S.Ct. at 2658. The Court noted that, in exercising such supervision and control, "[t]he [government] ... in effect require[s] participation in a religious exercise." *Id.* The Court concluded:

> No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise. That is being done here, and it is forbidden by the Establishment Clause of the First Amendment.

*Id.* at ——, 112 S.Ct. at 2661.

State sponsorship, i.e., involvement in, a graduation ceremony is inherent. A high school graduation, and certainly one's right

1. The court borrows the use of the term "delegate" from the unpublished opinion of the Third Circuit in *Am. Civil Liberties Union v. Blackhorse Pike Regional Board of Educ.,* No. 93–5368, slip op. at 1 (3d Cir. June 25, 1993).

2. In *Lee,* a middle school principal, invited a rabbi to deliver prayers at graduation, gave him a pamphlet containing guidelines to be followed and advised him that the prayers should be nonsectarian. —— U.S. at ——, 112 S.Ct. at 2652.

and desire to attend, is an important ingredient of school life—as much so as attending class. To involuntarily subject a student at such an event to a display of religion that is offensive or not agreeable to his or her own religion or lack of religion is to constructively exclude that student from graduation, given the options the student has. The Establishment Clause does not permit this to occur.

Nor can the state simply delegate the decision as to a prayer component of that ceremony to the graduating class without offending the Establishment Clause. The notion that a person's constitutional rights may be subject to a majority vote is itself anathema. The graduating classes in Loudoun County certainly could not have voted to exclude from the ceremonies persons of a certain race. To be constructively excluded from graduation ceremonies because of one's religion or lack of religion is not a great deal different. To the extent that *Jones v. Clear Creek Independent School District, supra,* permits such a delegation, this court respectfully rejects its reasoning.[3]

■ Alternatively, the court finds that even if a graduation at the high school level is not inherently state-sponsored nor inherently coercive, the facts here demonstrate an excessive state entanglement with religion in violation of the Establishment Clause.[4] Although the actions of each of the four schools differed slightly, for all of them the graduation is a state-sponsored event. Applicable to all of them was Superintendent Hatrick's Memorandum which, and this is the only interpretation which can realistically be given the Memorandum, pointed out that *Jones* revealed a way to avoid the proscription of *Lee.* Both cases were mentioned by name in the Memorandum. Applicable to all four schools was the April 6, 1993 Resolution of the School Board which exhorted student-sponsored invocations and benedictions at high school graduations. At all schools the same form of ballot, prepared by school officials, was used. The ballot read in its entirety as follows:

> Do we, the Senior Class at [school name], wish to have a nonsectarian, non-proselytizing invocation/benediction/prayer or inspirational message presented at graduation?
>
> Yes, I vote in favor of the above proposition.
>
> No, I vote against the above proposition. (PX 11)

At all of the schools except Loudoun Valley High School, the principals took action to initiate a senior class meeting at which to vote after first meeting with class officers and class faculty advisors. All class meetings held were mandatory for seniors at school that day. At all schools except Loudoun Valley, there was faculty or principal review of the remarks before they were made. At Loudoun Valley the principal reserved the "right" to review. In some cases, members of the clergy reviewed the remarks.[5] Some of the class officers were told of the Hatrick Memorandum. At Broad Run the principal discussed with the class the *Lee* and *Jones* cases by name. At Park View the Hatrick Memorandum was read to the class officers and again at the class meeting. At Loudoun County High School the principal selected the group (seven academically top ranked seniors) from which the speaker would be chosen if the class voted to have a prayer.

The defendants argue that what occurred at the high schools and what is permitted by the protocol adopted was no more than "so-

---

3. *Jones* is factually dissimilar to the instant case because the decision was only concerned with the facial validity of a school board resolution. The *Jones* court's holding, however, went well beyond that: the Court stated that the resolution, rather than directing and controlling the graduation program, permitted the graduating class to make the choice as to whether to include prayers at graduation. 977 F.2d at 971–72.

4. The court recognizes that this is the more "realistic" ground for its decision given that no court has declared that prayer at a high school graduation is *per se* unconstitutional.

5. The review requirement is problematic. If a principal or school officer does not review the remarks he or she could be accused of an abdication of responsibility. If the remarks are reviewed it smacks of state entanglement. Under the circumstances of this case it indicates state involvement—perhaps an unfortunate necessity if the state wants prayers to be allowed in the graduation ceremony.

lemnization," and thus had a secular purpose. They also argue that no religion was advanced or prohibited. A reading of the student remarks [6] does not bear the argument out.

The text of the remarks given at the Broad Run graduation is:

It has been said, "Redeem the time, because the days are evil" when we look at all that is going on around us, it become obvious that the world is spinning wildly out of control. Right now in Bosnia there is a war going on, where thousands of innocent people are being killed. In Central Africa, an entire generation is being killed by AIDS. There are famines in the Third World claiming the lives of the people there. If anyone could come up with answers to all these problems, then they would have.

The answer lies on a spiritual level that everyone needs to seek within themselves, to find the truth.

This graduation is an ending and a beginning. The end of 13 years of schooling. Also, this is the beginning of a quest, the beginning of our adult lives. I urge each of us, myself included, not to make our lives a quest for money, nor a quest for fame. These things will ultimately pass away and are not permanent solutions to life's problems. Instead I hope that we will all make our lives a quest for the truth. (PX 26)

The text of the remarks given at the Park View graduation is:

Dear Heavenly Father,

We thank you for the blessings you have bestowed upon us which have brought us together to celebrate this wonderful occasion. We thank you for our families, our teachers, and our friends who have helped us to grow physically, intellectually, and spiritually. As we move on to another phase in our lives, we humbly ask that you grant us the ability to meet each challenge and opportunity we may encounter with

strength, courage, and wisdom. Help us to spread your light wherever our paths may lead us and help us to always treat our fellow man with kindness and love. Amen. (PX 23)

The text of the remarks given at the Loudoun County High School graduation is:

Please stand and remain standing for the closing remarks and recessional.

Let us give thanks

Almighty,

Please watch over the future of these young men and women. Show them that the future for them is bright and although the road may be wearisome and long at times they are never alone. Show them the many open doors offered to them and help them to make the most of these opportunities. Guide these young men and women in their future endeavors and give them the talents and the tools necessary to their happiness and success in the future. Give them strength to endure hardships, wisdom to make decisions, courage to never give up, love and friendship to guide them and the faith that they can accomplish the impossible. Amen. (DX 10)

The text of the remarks given at Loudoun Valley High School graduation are:

Welcome honored friends, families, guests and candidates of graduation to the commencement exercises of the Class of 1993.

These commencement exercises mark the ending to one chapter of our lives and the preface to another. Let us reflect in our special ways upon the memories that we have compiled throughout our 4 years in high school—the bonds that we have established and the friendships we have strengthened are just a few remnants that we will cherish. Now let us bow our heads and give thanks to all those who have guided, supported and lead us to the point of which we are today.

—Silence—

---

**6.** All of the remarks do not invoke an "almighty," nor contain a reference to a "spiritual" force, nor close with an "amen" nor require a bowing of the head. It is the position of the defendants, however, that none of them violate the prongs of

*Lemon.* Presumably in the future, therefore, if they prevail in this action, the defendants would be free to use any one of them at any graduation if the protocol used in the Spring of 1993 were followed.

Best of luck to you, graduates of 1993. (Opening remarks, PX 27)

Let our faith guide us through these lessons of life to help us build a brighter future for us and generations to come. May the class of 1993 be blessed with a prosperous and successful future.

No we leave with a sense of dignity and pride. A pride in ourselves and in our accomplishments. We step into a whole new world full of love & hate, triumphs & tragedies, successes, and failures. (Closing remarks, PX 28)

The effect of the foregoing is to advance the religion of those who believe in a deity at the expense of non-believers, Jews, or other non-Christians. And indeed, as established, by the affidavits of Moline and Bantley, the non-denominational characterization of the remarks effectively exclude Jews or other non-Christians, thus inhibiting their religion. In any event, even if defendants could persuade the court that the graduation prayer had a clearly secular purpose and neither advanced nor inhibited religion, they would not prevail here. As noted above, the extent of state entanglement with religion on these facts requires the court to find an Establishment Clause violation.

### Objections to Stipulations and Evidence

The court sustains the defendants' objections, on the grounds of relevancy, to the facts stipulated in paragraphs 6, 13 and 14. Intent and motive are not issues in the case, nor are the facts stipulated in these paragraphs relevant on the issue of credibility, since the credibility of these witnesses is not really at issue in the case.

The court sustains the defendants' objections to the facts stipulated in paragraphs 18, 26 and 38.

The court overrules the defendants' objections to the facts stipulated in paragraphs 41 (part), 43 (part), 59, 90, 105, 108, 109 (part), 111, 112 (part), 116, 117, 118, 119, 120, 121, 122, 124 (part), 125 (part), 126 (part), 127 (part), and 128.

The court sustains the defendants' objections to the testimony of the expert Grande. An expert's testimony is not needed to estab-

lish the effects of peer pressure on adolescents, or the importance, symbolically or otherwise, of the graduation ceremony. The objection of the defendants to the affidavits of Moline and Bantley are overruled.

The objection of the plaintiffs to the videotapes of the four graduation ceremonies is sustained. The exhibits which contain the remarks given at the ceremonies are sufficient for the court to reach its conclusion.

### Conclusion

For the foregoing reasons, the court will declare that permitting prayer in a state or School Board sponsored high school graduation is a violation of the Establishment Clause of the First Amendment; and that the manner in which the School Board and its superintendent and principals permitted prayer in the high schools does not reflect a clearly secular purpose, has a primary effect that advances or inhibits religion and does not avoid excessive government entanglement with religion. An injunction will issue forbidding the defendants from permitting prayer at Loudoun County, Virginia, high school graduation ceremonies. The injunction is predicated on the court's acceptance of the plaintiffs' primary argument. If only the alternative argument were accepted, obviously a more narrow injunction would be issued.

### ORDER

For the reasons set forth in the Memorandum Opinion this day filed which, together with the Joint Stipulation of Facts and affidavits of Bantley and Moline, the court adopts as its findings of fact and conclusions of law, it is

(1) DECLARED that permitting prayer at high school graduations sponsored by the Loudoun County School Board (School Board) is a violation of the Establishment Clause of the First Amendment; and that the manner in which the School Board and its superintendent and high school principals permitted prayer in the high school graduations does not reflect a clearly secular purpose, has a primary effect that advances and inhibits religion, and does not avoid excessive government entanglement with religion.

(2) ORDERED that the defendants Loudoun County School Board, Edward B. Hatrick, Superintendent of Schools for Loudoun County, and Edward Starzenski, James E. Person, Kenneth W. Culbert and E. Wayne Griffith, principals of the four Loudoun County High Schools, their successors and those in privity with them, are permanently enjoined from permitting prayer in high school graduations in Loudoun County, Virginia.