Revised April 9, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40150

_____

JANE DOE, Individually and as next of
friend for her minor children,
Jane and John Doe, Minor Children;
JANE DOE #2, Individually and as next
of friend for her minor child,
John Doe, Minor Child, and John Doe,
Individually,

                        Plaintiffs-Appellees-Cross Appellants,

                    versus

SANTA FE INDEPENDENT SCHOOL DISTRICT, ET AL.,

                                    Defendants,

SANTA FE INDEPENDENT SCHOOL DISTRICT,

                    Defendant-Appellant-Cross Appellee.
_____

Appeals from the United States District Court for the
            Southern District of Texas
_____
                    April 7, 1999

Before JOLLY[*], WIENER, and STEWART, Circuit Judges.

PER CURIAM:

    The Petition for Rehearing is denied, and the court having

been polled at the request of one of the members of the court and

a majority of the judges who are in regular active service not

_____

    [*]    Judge Jolly's opinion dissenting from the court's
refusal to grant rehearing en banc is filed herewith.

having voted in favor, (FED. R. APP. P. and 5TH CIR. R. 35) the Suggestion for Rehearing En Banc is also DENIED.

E. GRADY JOLLY, Circuit Judge, with whom HIGGINBOTHAM, JONES, SMITH, BARKSDALE, EMILIO M. GARZA, and DeMOSS, Circuit Judges, join, dissenting:

I respectfully dissent from the court's denial of the petition for en banc hearing.

Every judge on this court must surely know that the policy announced by the majority of the panel--permitting students' ecumenical religious prayers or speech, but excluding all other religious prayers or speech by students--is unconstitutional. Yet a majority of this court has voted against an en banc proceeding to correct constitutional error. Although I have great respect for each of these judges who is unwilling to step up to bat, I must say to them that we fail our constitutional and professional duty when we shy away from attempting to straighten out our muddled jurisprudence. The judges who voted against en banc are certainly not to be faulted for disagreeing with the viewpoint expressed in the dissent to the panel opinion--it may be a correct view of the case or it may not. But for the reasons that are pointed out in the panel dissent, the majority is surely, surely wrong in fundamental ways, and yet the majority of the judges on our court wish to remain silent on an issue of great importance--and great confusion--in the circuit. With due respect, I regret their choice.

The majority opinion in Santa Fe appears to be a conscious decision, not merely to refuse to follow Supreme Court precedent, but to abdicate its duty to provide reasons for not following that precedent. The majority finds that the First Amendment allows ecumenical religious speech, but then somehow concludes--under the very same conditions--that the First Amendment prohibits religious speech expressing any other viewpoint. See Santa Fe, 1999 WL 104884, at *19 ("the words 'nonsectarian, nonproselytizing' are constitutionally necessary components"). The majority acknowledges that this ruling endorses viewpoint discrimination.

Yet the fact that the Supreme Court has repeatedly stated that the government cannot engage in viewpoint discrimination when it creates any kind of a forum--even a nonpublic forum--does not give the majority pause. See, e.g., Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 806 (1985) ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn . . . are viewpoint neutral."); Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983). The Supreme Court has specifically recognized--after our opinion in Clear Creek II--that this Free Speech Clause prohibition operates in the realm of religious speech. Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 394 (1993). The panel majority's response to these admonitions? Silence. Now, because we decline to take this case en banc, our full court responds in silence as well. This

4

silence is inexplicable in the light of the Supreme Court's recent statement that "[t]he first danger to liberty lies in granting the State the power to examine publications to determine whether or not they are based on some ultimate idea and, if so, for the State to classify them." <u>Rosenberger v. Rector and Visitors of the Univ. of Virginia</u>, 515 U.S. 819, 835 (1995) (concluding that the state unconstitutionally excluded a religious viewpoint from general funding of student publications). The danger lurks just as ominously when the State exercises this power over students' speech, and this court greatly enhances the danger when it--an institution insulated from democratic restraints--refuses to explain why it allocates this power to the State in the face of contrary Supreme Court precedent.

The <u>Santa Fe</u> majority also casts our Circuit's Establishment Clause jurisprudence into throes of uncertainty. The majority opinions in <u>Santa Fe</u> and <u>Jones v. Clear Creek Independent Sch. Dist.</u>, 977 F.2d 963 (5th Cir. 1992), are so clearly in conflict with each other that school districts within our jurisdiction will have no guidance on how to interpret our confused precedent.

The <u>Santa Fe</u> opinion conflicts with <u>Clear Creek II</u> in multiple ways--each important, and each without any explanation by the <u>Santa Fe</u> majority. First, and perhaps most puzzling, is the <u>Santa Fe</u> majority's holding that the Establishment Clause will not allow students to mention specific deities in their graduation messages, <u>Santa Fe</u>, 1999 WL 104884, at *16, when in <u>Clear Creek II</u>, our court

5

upheld a policy that allowed students to "employ the name of any deity." <u>Clear Creek II</u>, 977 F.2d at 967; <u>see also</u> <u>id.</u> at 969 ("invocations permitted by the Resolution 'may' include supplication to a deity"). The <u>Santa Fe</u> majority makes no effort to explain away its stark departure from our precedent. School districts are left to wonder whether they may allow students to state the name of Buddha, Jesus, Jehovah, or Mohammed in their graduation messages. Because <u>Clear Creek II</u> stands as prior precedent, school districts will be free to follow it, instead of the upstart rule announced in <u>Santa Fe</u>.

In yet another unexplained departure from <u>Clear Creek II</u>, the <u>Santa Fe</u> majority interpreted a policy allowing "invocations and/or benedictions" so as to allow only religious prayers. <u>Santa Fe</u>, 1999 WL 104884, at *14 (students "will be chosen to deliver very circumscribed statements that under any definition are prayers"). The <u>Clear Creek II</u> panel also interpreted a policy allowing for "invocations and/or benedictions." That panel, however, held that the policy "permits invocations free of all religious content." <u>Clear Creek II</u>, 977 F.2d at 969. Yet again, there is no articulated authority to legitimize a holding that contradicts precedent.

Still another element of the jurisprudential quagmire following <u>Santa Fe</u> is the majority's decision to ignore the analytical approach that our precedent dictates when addressing a facial challenge to a school policy. In <u>Clear Creek II</u>, the panel

6

recognized that because it was faced with a suit challenging the facial constitutionality of a school policy, the court must find that the policy "is constitutional unless there is no way to implement it on a nondiscriminatory basis." Clear Creek II, 977 F.2d at 969. Without even so much as discussing the fact that the case presented a facial challenge to Santa Fe's policy, the Santa Fe majority assumed, for example, that the policy would restrict the number of student speakers to either one or two, and also assumed that the school would strictly limit the topics that the elected students could address. Santa Fe, 1999 WL 104884, at *14. The majority assumed these "facts" even though the policy--and the record--is silent as to these hypothetical restrictions.

Santa Fe is not our Circuit's only case to hide from the analytical rule required by Clear Creek II. The panel in Ingebretsen v. Jackson Public School Dist., 88 F.3d 274, 279 n.2 (5th Cir. 1996), also ignored the rule without mentioning Clear Creek II. In its refusal to differentiate between a facial and an "as-applied" Establishment Clause challenge, the Ingebretsen panel cited two Supreme Court decisions, handed down in the late Eighties, in a footnote. Id., 88 F.3d at 279 n.2. Given our decision in Clear Creek II, however, the Ingebretsen panel's opinion on this issue was a day late and a Supreme Court citation short of relying on legitimate authority. See Barber v. Johnson, 145 F.3d 234, 237 (5th Cir. 1997) (stating the rule that in this circuit one panel may not overrule another prior panel absent

7

intervening legislation, a decision by our en banc court, or a decision of the Supreme Court).

Upon reading Santa Fe, Ingebretsen, and Clear Creek II, it seems, with regard to the Establishment Clause, that panels of our court pay little regard to previous jurisprudence. One might think that a specific holding of a prior opinion is no more than a puff of wind. Santa Fe disregards Clear Creek II today. The next panel can disregard Santa Fe tomorrow. When judges can pick and choose without the constraints imposed by precedent, the public is left stranded, vulnerable to liability, helplessly dependent on the panel it draws. We could fulfill our constitutional and professional duty to the public, vote this case en banc, and be of a single voice. But when our court refuses to rehear en banc cases such as Santa Fe, this unrestrained decision-making goes uncorrected. This failure to act, in turn, allows individual members of our court to continue to engage in an activity that has all the appearance of simply advancing personal philosophy.

For these reasons, I respectfully DISSENT from the denial of rehearing en banc.