United States Court of Appeals,

Fifth Circuit.

No. 94-60631.

David INGEBRETSEN, on Behalf of himself and his daughter, Anna INGEBRETSEN, et al., Plaintiffs-Appellees, Appellants-Cross Appellants,

v.

JACKSON PUBLIC SCHOOL DISTRICT and The Board of Trustees Of The Jackson Municipal Separate School District, Defendants-Appellees,

and

Mike Moore, In his official capacity as the Attorney General of the State of Mississippi, Defendant-Appellant, Cross Appellee,

Amelia Freeman, Jessica Massey and Stacy Smith, Movants-Appellants.

Jan. 10, 1996.

Appeals from the United States District Court for the Southern District of Mississippi.

Before DAVIS and PARKER, Circuit Judges and BUNTON,[1] District Judge.

W. EUGENE DAVIS, Circuit Judge:

The State of Mississippi appeals the district court's decision to enjoin enforcement of a Mississippi statute allowing prayer at compulsory and noncompulsory school events. Ingebretsen cross-appeals to protest the exemption of graduation prayers from the injunction and the American Family Association Law Center ("AFALC") appeals the district court's denial of its motion to intervene. We affirm.

I.

---

[1]District Judge of the Western District of Texas, sitting by designation.

On a wave of public sentiment and indignation over the treatment of a Principal, Dr. Bishop Knox, who allowed students to begin each school day with a prayer over the intercom, the Mississippi legislature passed the School Prayer Statute at issue here. 1994 Miss.Laws ch. 609 (Appendix A). The language at the center of this controversy is § 1(2) of the statute which reads:

> [o]n public school property, other public property or other property, invocations, benedictions or nonsectarian, nonproselytizing student-initiated voluntary prayer shall be permitted during compulsory or noncompulsory school-related student assemblies, student sporting events, graduation or commencement ceremonies and other school-related student events.

1994 Miss.Laws ch. 609, § 1(2).

The statute includes a lengthy preamble stating that it shall not be construed to violate the constitution and that its purpose is to accommodate religion and the right to free speech. The School Prayer Statute also contains a severability clause which permits any provision of the statute found to be invalid or unconstitutional to be severed without affecting the remainder of the statute. *See Id.* § 1(4), (5).

A group of parents, students, and taxpayers in the Jackson Public School District, including Ingebretsen, filed suit along with the American Civil Liberties Union of Mississippi in July of 1994 to enjoin enforcement of the School Prayer Statute on the ground that it violates the establishment clause. A motion for a preliminary injunction to preserve the status quo was filed simultaneously with the complaint.

On August 4, 1994, the district court held a hearing on

2

Ingebretsen's motion to enjoin the defendants from implementing in any manner the School Prayer Statute. At that time, the district court also heard the motion of AFALC to intervene on behalf of certain students enrolled in Mississippi public schools. The district court decided to hold the motion for intervention in abeyance, but permitted AFALC to present argument at the hearing as amicus curiae. AFALC was instructed to re-urge its motion after the court ruled on the motion for preliminary injunction.

On August 11, 1994, one day before the start of the 1994-1995 academic year for the Mississippi public schools, the district court issued a preliminary injunction prohibiting enforcement of the School Prayer Statute. The injunction was designed to maintain the status quo until the court had full opportunity to assess each portion of the statute separately. On August 16, 1994, the court held a supplemental hearing to determine what portion of the statute, if any, could escape the injunction by its severability clause. The court heard the testimony of Dr. Dan Merritt, Interim Superintendent of the District, and Dr. Emanuel Reeves, principal of Provine High School in Jackson, Mississippi and concluded that the provision for prayers at high school commencement exercises was the only constitutionally acceptable portion of the statute.

The district court enjoined enforcement of the statute in its entirety with the exception of the portion which permits prayers to take place at graduation ceremonies in accordance with *Jones v. Clear Creek Indep. School Dist.,* 977 F.2d 963, 972 (5th Cir.1992) (*Jones II* ).

3

## II.

Mississippi argues first that Ingebretsen does not have standing to challenge the School Prayer Statute because the statute has not yet been implemented.  However, the district court found that Ingebretsen had alleged real and substantial injury which would result from the implementation of the School Prayer Statute. We agree.  There is no need for Ingebretsen to wait for actual implementation of the statute and actual violations of his rights under the First Amendment where the statute "makes inappropriate government involvement in religious affairs inevitable." *Karen B. v. Treen,* 653 F.2d 897, 902 (5th Cir.1981).  The district court relied on the testimony of Dr. Merritt and Dr. Reeves and the enormous interest in school prayer following the suspension of Dr. Knox to conclude that implementation of the statute would inevitably lead to improper state involvement in school prayer. Under the terms of the statute, the state or its representatives will inevitably be forced to decide who prays and which prayers qualify as nonsectarian and nonproselytizing.  The state will also be in the position of punishing students who attempt to leave so as to avoid hearing the prayers.  This is clearly the sort of state involvement contemplated by *Karen B.*

## III.

Mississippi argues next that the district court erred in issuing the preliminary injunction.  To obtain a preliminary injunction, Ingebretsen was required to show:  1) a substantial likelihood of success on the merits;  2) a substantial threat that

4

he will suffer irreparable injury if the injunction is not issued; 3) that the threatened injury to him outweighs any damage the injunction might cause to the state and its citizens; and 4) that the injunction will not disserve the public interest. *Doe v. Duncanville Independent School Dist.* (*Doe I* ), 994 F.2d 160, 163 (5th Cir.1993) (citations omitted). The district court made findings under all of these factors and concluded that the injunction was appropriate. This court will reverse the district court only upon a showing of abuse of discretion. *Id.*

A. Substantial likelihood of success

The Fifth Circuit has identified three tests that the Supreme Court has used to determine whether a government action or policy constitutes an establishment of religion. *See Jones II,* 977 F.2d 963. First, the Establishment Clause test of longest lineage: the *Lemon* test. *Lemon v. Kurtzmann,* 403 U.S. 602, 612-613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Under *Lemon,* a government practice is constitutional if (1) it has a secular purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not excessively entangle government with religion. *Id.* Second, the Court has analyzed school-sponsored religious activity in terms of the coercive effect that the activity has on students. *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Third, the Court has disapproved of governmental practices that appear to endorse religion. *County of Allegheny v. ACLU,* 492 U.S. 573, 594, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989). *See also Capitol Square Review Board v. Pinette,* --- U.S. ----, ---- -

5

----, 115 S.Ct. 2440, 2452-2456, 132 L.Ed.2d 650 (1995) (O'Connor, J., concurring).  The district court did not make an exhaustive analysis under each of the tests because it found that the statute was defective under any of the tests.  We agree.

The School Prayer Statute fails all three prongs of the *Lemon* test because its purpose is to advance prayer in public schools, its effect is to advance religion in the schools and it excessively entangles the government with religion.  The legislature declared that its purpose in enacting the School Prayer Statute was "to accommodate the free exercise of religious rights of its student citizens in the public schools."  1994 Miss.Laws ch. 609 § 1(1). This statement of purpose cannot be characterized as "secular" because its clear intent is to inform students, teachers and school administrators that they can pray at any school event so long as a student "initiates" the prayer (ostensibly by suggesting that a prayer be given).  Further, when we view this statute along with this same legislature's resolution commending Dr. Knox for his "unswerving dedication to prayer in public schools," and in the context of the uproar over Dr. Knox's treatment after allowing prayer in his school, the conclusion that the School Prayer Statute was intended to advance religion becomes unavoidable.  Returning prayer to public schools is not a secular purpose.

The statute's effect is to advance religion over irreligion because it gives a preferential, exceptional benefit to religion that it does not extend to anything else. *See Herdahl v. Pontotoc County School District,* 887 F.Supp. 902, 908-09 (N.D.Miss.1995)

6

(school policy of turning public address system over to religious club for morning invocation and scripture reading has primary effect of advancing religion). Students are required by law to attend school and a state policy of prayer at school tells students that the state wants them to pray.

The final prong of *Lemon* is also violated by the School Prayer Statute because representatives of the government are allowed to lead students in prayer and punish students who leave class or assemblies in order to avoid listening to a prayer. The statute will inevitably involve school officials in determining which prayers are "nonsectarian and nonproselytizing" and in determining who gets to say the prayer at each event. To the extent that school administrators participate in prayers in their official capacity or review the content of prayers to ensure that they meet these requirements, the School Prayer Statute excessively entangles government with religion.[2]

The School Prayer Statute is also unconstitutional under the "coercion test" of *Lee,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). The statute would allow prayers to be given by any person, including teachers, school administrators and clergy at

---

[2]The Attorney General also argues that Ingebretsen has not met his burden of showing that the statute is facially invalid. However, in establishment clause cases facial attacks are considered under the *Lemon* test and the Supreme Court has refused to draw distinctions between facial and "as applied" attacks. *See Bowen v. Kendrick,* 487 U.S. 589, 601-02, 108 S.Ct. 2562, 2569-70, 101 L.Ed.2d 520 (1988); *Edwards v. Aguillard,* 482 U.S. 578, 581, 583, 107 S.Ct. 2573, 2576-77, 96 L.Ed.2d 510 (1987). The above discussion demonstrates the invalidity of this statute under *Lemon.*

school functions where attendance is compulsory.  1994 Miss.Laws ch. 609 § 1(2).  The coercion here is even greater than that in *Lee* where students had the option of not attending the graduation ceremony where the challenged prayer was offered.  Here, students will be a captive audience that cannot leave without being punished by the state or School Board for truancy or excessive absences.

This brings us to the final test:  the endorsement test.  Government unconstitutionally endorses religion whenever it appears to " "take a position on questions of religious belief,' " or makes " "adherence to a religion relevant in any way to a person's standing in the political community,' " *Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687, 104 S.Ct. 1355, 1366, 79 L.Ed.2d 604 (1984)).  The government creates this appearance when it conveys a message that religion is "favored," "preferred," or "promoted" over other beliefs.  *Allegheny,* 492 U.S. at 593, 109 S.Ct. at 3100-01.  The School Prayer Statute is an unconstitutional endorsement of religion because it allows school officials in their capacity as representatives of the state to lead students in prayer and sets aside special time for prayer that it does not set aside for anything else.  It also places the coercive power of the state in the position of forcing students to attend school and then forcing them to listen to prayers offered there.

Under any of these tests, the District Court's determination that Ingebretsen had shown a substantial likelihood of prevailing on the merits was not an abuse of discretion.

8

B. A substantial threat of irreparable injury

Ingebretsen has shown that the School Prayer Statute represents a substantial threat to his First Amendment rights. *Doe I,* 994 F.2d at 166. Loss of First Amendment freedoms, even for minimal periods of time, constitute irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

C. The threatened injury outweighs any damage the injunction might cause to Mississippi and its citizens

The only harm asserted by the Attorney General is that the injunction would have a chilling effect on students who would like to pray at school. However, the court correctly held that the injunction affected only the School Prayer Statute and would not affect students' existing rights to the free exercise of religion and free speech. Therefore, students continue to have exactly the same constitutional right to pray as they had before the statute was enjoined. They can pray silently or in a non-disruptive manner whenever and wherever they want, *Wallace v. Jaffree,* 472 U.S. 38, 67, 105 S.Ct. 2479, 2495, 86 L.Ed.2d 29 (1985) (O'Connor concurring), in groups before or after school or in any limited open forum created by the school. *See Bd. of Educ. of Westside Community Schools v. Mergens,* 496 U.S. 226, 240, 110 S.Ct. 2356, 2366, 110 L.Ed.2d 191 (1990).

D. The injunction will not disserve the public interest.

The School Prayer Statute is unconstitutional so the public interest was not disserved by an injunction preventing its implementation.

9

All four requirements of a preliminary injunction were properly met. The district court did not abuse its discretion in determining that a preliminary injunction was warranted.

IV.

We decline Ingebretsen's invitation to reconsider our holding in *Jones II* which allows students to choose to solemnize their graduation ceremonies with a student-initiated, non-proselytizing and nonsectarian prayer given by a student. 977 F.2d at 965 n. 1. To the extent the School Prayer Statute allows students to choose to pray at high school graduation to solemnize that once-in-a-lifetime event, we find it constitutionally sound under *Jones II.*

V.

Finally, the Proposed Intervenors and the Attorney General assert that the Proposed Intervenors should have been allowed to intervene as of right under Rule 24(a)(2) or permissively under Rule 24(b). Fed.R.Civ.Proc. 24 (West 1995). The district court denied the application to intervene as of right solely on the ground that the Proposed Intervenors' interests were already adequately represented by the Attorney General and we review that determination *de novo.* The Proposed Intervenors and the Attorney General claim that the denial was error and that intervention was necessary to allow the Proposed Intervenors to assert their constitutionally protected rights of free exercise of religion and free speech. However, the only issue before the court is the validity of the School Prayer Statute and the Attorney General, in

10

defending that statute, can assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors. The Attorney General undoubtedly affords the Proposed Intervenors' interests adequate representation.

The denial of permissive intervention was also appropriate because the Proposed Intervenors bring no new issues to this action. The abuse of discretion standard of review for such a denial is "exceedingly deferential" to the district court, and "this circuit has never reversed a denial of permissive intervention." *Doe I,* 994 F.2d at 168 n. 10 (citation omitted). The district court's conclusion that the Proposed Intervenors would bring only delay to this action was not plain error.

*Conclusion*

The district court did not abuse its discretion in preliminarily enjoining the enforcement of the School Prayer Statute. Ingebretsen's claim showed a substantial likelihood of success on the merits, irreparable harm, more harm from the new law than from the injunction and that the injunction served the public interest. The district court also decided correctly to deny intervention on the ground that the Proposed Intervenors are adequately represented by the Attorney General. The Attorney General's argument for the statute on appeal is grounded almost entirely on the First Amendment rights of students. The Proposed Intervenors do not assert that students have any rights that the Attorney General has not also asserted in support of the statute. The district court's denial of permissive intervention was proper

11

for the same reasons: Proposed Intervenors would add nothing to this action except additional parties.

For these reasons, the district court's orders enjoining the enforcement of the School Prayer Statute except as to nonsectarian, nonproselytizing student initiated voluntary prayer at high school commencement as condoned by *Jones II* and denying AFALC's motion for intervention are AFFIRMED.

AFFIRMED.