88 F.3d 274
 64 USLW 2443, 110 Ed. Law Rep. 942
 David INGEBRETSEN, on Behalf of himself and his daughter,
Anna INGEBRETSEN, et al., Plaintiffs-Appellees,
Appellants-Cross Appellants,
v.
JACKSON PUBLIC SCHOOL DISTRICT and The Board of Trustees Of
The Jackson Municipal Separate School District,
Defendants-Appellees,
and
Mike Moore, In his official capacity as the Attorney General
of the State of Mississippi, Defendant-Appellant,
Cross Appellee,
Amelia Freeman, Jessica Massey and Stacy Smith, Movants-Appellants.
 No. 94-60631.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 10, 1996.
Opinion Denying Rehearing and
Rehearing En Banc May 31, 1996.
Opinion Dissenting from Denial of
Rehearing En Banc Filed by
Circuit Judge Jones July 2, 1996.
 
 T. Hunt Cole, Jr., Asst. Atty. Gen., Mike Moore, Atty. Gen., Jackson, MS, for Moore.
 Natham W. Kellum, Brian Fahling, Amer. Family Assoc., Tupelo, MS, for Freeman, Massey and Smith.
 Robert B. McDuff, Jackson, MS, John G. Jones, Jackson, MS, Elliot M. Mincberg, Judith E. Schaeffer, Washington, DC, for Ingebretsen, et al.
 J. Perry Sansing, James A. Keith, Brunini, Grantham, Grower & Hewes, Jackson, MS, for JPSD, et al.
 Jessica Smith, David B. Isbell, Covington & Burling, Washington, DC, amicus curiae in support of Ingebretsen, et al., for National Pearl.
 Marc D. Stern, American Jewish Congress, New York City, amicus curiae in support of Ingebretsen, et al., for American Jewish Congress, et al.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before DAVIS and PARKER, Circuit Judges and BUNTON,[1] District Judge.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 The State of Mississippi appeals the district court's decision to enjoin enforcement of a Mississippi statute allowing prayer at compulsory and noncompulsory school events. Ingebretsen cross-appeals to protest the exemption of graduation prayers from the injunction and the American Family Association Law Center ("AFALC") appeals the district court's denial of its motion to intervene. We affirm.
 
 I.
 
 2
 On a wave of public sentiment and indignation over the treatment of a Principal, Dr. Bishop Knox, who allowed students to begin each school day with a prayer over the intercom, the Mississippi legislature passed the School Prayer Statute at issue here. 1994 Miss.Laws ch. 609 (Appendix A). The language at the center of this controversy is § 1(2) of the statute which reads:
 
 
 3
 [o]n public school property, other public property or other property, invocations, benedictions or nonsectarian, nonproselytizing student-initiated voluntary prayer shall be permitted during compulsory or noncompulsory school-related student assemblies, student sporting events, graduation or commencement ceremonies and other school-related student events.
 
 
 4
 1994 Miss.Laws ch. 609, § 1(2).
 
 
 5
 The statute includes a lengthy preamble stating that it shall not be construed to violate the constitution and that its purpose is to accommodate religion and the right to free speech. The School Prayer Statute also contains a severability clause which permits any provision of the statute found to be invalid or unconstitutional to be severed without affecting the remainder of the statute. See Id. § 1(4), (5).
 
 
 6
 A group of parents, students, and taxpayers in the Jackson Public School District, including Ingebretsen, filed suit along with the American Civil Liberties Union of Mississippi in July of 1994 to enjoin enforcement of the School Prayer Statute on the ground that it violates the establishment clause. A motion for a preliminary injunction to preserve the status quo was filed simultaneously with the complaint.
 
 
 7
 On August 4, 1994, the district court held a hearing on Ingebretsen's motion to enjoin the defendants from implementing in any manner the School Prayer Statute. At that time, the district court also heard the motion of AFALC to intervene on behalf of certain students enrolled in Mississippi public schools. The district court decided to hold the motion for intervention in abeyance, but permitted AFALC to present argument at the hearing as amicus curiae. AFALC was instructed to re-urge its motion after the court ruled on the motion for preliminary injunction.
 
 
 8
 On August 11, 1994, one day before the start of the 1994-1995 academic year for the Mississippi public schools, the district court issued a preliminary injunction prohibiting enforcement of the School Prayer Statute. The injunction was designed to maintain the status quo until the court had full opportunity to assess each portion of the statute separately. On August 16, 1994, the court held a supplemental hearing to determine what portion of the statute, if any, could escape the injunction by its severability clause. The court heard the testimony of Dr. Dan Merritt, Interim Superintendent of the District, and Dr. Emanuel Reeves, principal of Provine High School in Jackson, Mississippi and concluded that the provision for prayers at high school commencement exercises was the only constitutionally acceptable portion of the statute.
 
 
 9
 The district court enjoined enforcement of the statute in its entirety with the exception of the portion which permits prayers to take place at graduation ceremonies in accordance with Jones v. Clear Creek Indep. School Dist., 977 F.2d 963, 972 (5th Cir.1992) (Jones II ).
 
 II.
 
 10
 Mississippi argues first that Ingebretsen does not have standing to challenge the School Prayer Statute because the statute has not yet been implemented. However, the district court found that Ingebretsen had alleged real and substantial injury which would result from the implementation of the School Prayer Statute. We agree. There is no need for Ingebretsen to wait for actual implementation of the statute and actual violations of his rights under the First Amendment where the statute "makes inappropriate government involvement in religious affairs inevitable." Karen B. v. Treen, 653 F.2d 897, 902 (5th Cir.1981). The district court relied on the testimony of Dr. Merritt and Dr. Reeves and the enormous interest in school prayer following the suspension of Dr. Knox to conclude that implementation of the statute would inevitably lead to improper state involvement in school prayer. Under the terms of the statute, the state or its representatives will inevitably be forced to decide who prays and which prayers qualify as nonsectarian and nonproselytizing. The state will also be in the position of punishing students who attempt to leave so as to avoid hearing the prayers. This is clearly the sort of state involvement contemplated by Karen B.
 
 III.
 
 11
 Mississippi argues next that the district court erred in issuing the preliminary injunction. To obtain a preliminary injunction, Ingebretsen was required to show: 1) a substantial likelihood of success on the merits; 2) a substantial threat that he will suffer irreparable injury if the injunction is not issued; 3) that the threatened injury to him outweighs any damage the injunction might cause to the state and its citizens; and 4) that the injunction will not disserve the public interest. Doe v. Duncanville Independent School Dist. (Doe I ), 994 F.2d 160, 163 (5th Cir.1993) (citations omitted). The district court made findings under all of these factors and concluded that the injunction was appropriate. This court will reverse the district court only upon a showing of abuse of discretion. Id.
 
 A. Substantial likelihood of success
 
 12
 The Fifth Circuit has identified three tests that the Supreme Court has used to determine whether a government action or policy constitutes an establishment of religion. See Jones II, 977 F.2d 963. First, the Establishment Clause test of longest lineage: the Lemon test. Lemon v. Kurtzman, 403 U.S. 602, 612-613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Under Lemon, a government practice is constitutional if (1) it has a secular purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not excessively entangle government with religion. Id. Second, the Court has analyzed school-sponsored religious activity in terms of the coercive effect that the activity has on students. Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Third, the Court has disapproved of governmental practices that appear to endorse religion. County of Allegheny v. ACLU, 492 U.S. 573, 594, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989). See also Capitol Square Review Board v. Pinette, --- U.S. ----, ---- - ----, 115 S.Ct. 2440, 2452-2456, 132 L.Ed.2d 650 (1995) (O'Connor, J., concurring). The district court did not make an exhaustive analysis under each of the tests because it found that the statute was defective under any of the tests. We agree.
 
 
 13
 The School Prayer Statute fails all three prongs of the Lemon test because its purpose is to advance prayer in public schools, its effect is to advance religion in the schools and it excessively entangles the government with religion. The legislature declared that its purpose in enacting the School Prayer Statute was "to accommodate the free exercise of religious rights of its student citizens in the public schools." 1994 Miss.Laws ch. 609 § 1(1). This statement of purpose cannot be characterized as "secular" because its clear intent is to inform students, teachers and school administrators that they can pray at any school event so long as a student "initiates" the prayer (ostensibly by suggesting that a prayer be given). Further, when we view this statute along with this same legislature's resolution commending Dr. Knox for his "unswerving dedication to prayer in public schools," and in the context of the uproar over Dr. Knox's treatment after allowing prayer in his school, the conclusion that the School Prayer Statute was intended to advance religion becomes unavoidable. Returning prayer to public schools is not a secular purpose.
 
 
 14
 The statute's effect is to advance religion over irreligion because it gives a preferential, exceptional benefit to religion that it does not extend to anything else. See Herdahl v. Pontotoc County School District, 887 F.Supp. 902, 908-09 (N.D.Miss.1995) (school policy of turning public address system over to religious club for morning invocation and scripture reading has primary effect of advancing religion). Students are required by law to attend school and a state policy of prayer at school tells students that the state wants them to pray.
 
 
 15
 The final prong of Lemon is also violated by the School Prayer Statute because representatives of the government are allowed to lead students in prayer and punish students who leave class or assemblies in order to avoid listening to a prayer. The statute will inevitably involve school officials in determining which prayers are "nonsectarian and nonproselytizing" and in determining who gets to say the prayer at each event. To the extent that school administrators participate in prayers in their official capacity or review the content of prayers to ensure that they meet these requirements, the School Prayer Statute excessively entangles government with religion.[2]
 
 
 16
 The School Prayer Statute is also unconstitutional under the "coercion test" of Lee, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). The statute would allow prayers to be given by any person, including teachers, school administrators and clergy at school functions where attendance is compulsory. 1994 Miss.Laws ch. 609 § 1(2). The coercion here is even greater than that in Lee where students had the option of not attending the graduation ceremony where the challenged prayer was offered. Here, students will be a captive audience that cannot leave without being punished by the state or School Board for truancy or excessive absences.
 
 
 17
 This brings us to the final test: the endorsement test. Government unconstitutionally endorses religion whenever it appears to " 'take a position on questions of religious belief,' " or makes " 'adherence to a religion relevant in any way to a person's standing in the political community,' " Allegheny, 492 U.S. at 594, 109 S.Ct. at 3101 (quoting Lynch v. Donnelly, 465 U.S. 668, 687, 104 S.Ct. 1355, 1366, 79 L.Ed.2d 604 (1984)). The government creates this appearance when it conveys a message that religion is "favored," "preferred," or "promoted" over other beliefs. Allegheny, 492 U.S. at 593, 109 S.Ct. at 3100-01. The School Prayer Statute is an unconstitutional endorsement of religion because it allows school officials in their capacity as representatives of the state to lead students in prayer and sets aside special time for prayer that it does not set aside for anything else. It also places the coercive power of the state in the position of forcing students to attend school and then forcing them to listen to prayers offered there.
 
 
 18
 Under any of these tests, the District Court's determination that Ingebretsen had shown a substantial likelihood of prevailing on the merits was not an abuse of discretion.
 
 
 19
 B. A substantial threat of irreparable injury
 
 
 20
 Ingebretsen has shown that the School Prayer Statute represents a substantial threat to his First Amendment rights. Doe I, 994 F.2d at 166. Loss of First Amendment freedoms, even for minimal periods of time, constitute irreparable injury. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).
 
 
 21
 C. The threatened injury outweighs any damage the injunction might cause to Mississippi and its citizens
 
 
 22
 The only harm asserted by the Attorney General is that the injunction would have a chilling effect on students who would like to pray at school. However, the court correctly held that the injunction affected only the School Prayer Statute and would not affect students' existing rights to the free exercise of religion and free speech. Therefore, students continue to have exactly the same constitutional right to pray as they had before the statute was enjoined. They can pray silently or in a non-disruptive manner whenever and wherever they want, Wallace v. Jaffree, 472 U.S. 38, 67, 105 S.Ct. 2479, 2495, 86 L.Ed.2d 29 (1985) (O'Connor concurring), in groups before or after school or in any limited open forum created by the school. See Bd. of Educ. of Westside Community Schools v. Mergens, 496 U.S. 226, 240, 110 S.Ct. 2356, 2366, 110 L.Ed.2d 191 (1990).
 
 
 23
 D. The injunction will not disserve the public interest.
 
 
 24
 The School Prayer Statute is unconstitutional so the public interest was not disserved by an injunction preventing its implementation.
 
 
 25
 All four requirements of a preliminary injunction were properly met. The district court did not abuse its discretion in determining that a preliminary injunction was warranted.
 
 IV.
 
 26
 We decline Ingebretsen's invitation to reconsider our holding in Jones II which allows students to choose to solemnize their graduation ceremonies with a student-initiated, non-proselytizing and nonsectarian prayer given by a student. 977 F.2d at 965 n. 1. To the extent the School Prayer Statute allows students to choose to pray at high school graduation to solemnize that once-in-a-lifetime event, we find it constitutionally sound under Jones II.
 
 V.
 
 27
 Finally, the Proposed Intervenors and the Attorney General assert that the Proposed Intervenors should have been allowed to intervene as of right under Rule 24(a)(2) or permissively under Rule 24(b). Fed.R.Civ.Proc. 24 (West 1995). The district court denied the application to intervene as of right solely on the ground that the Proposed Intervenors' interests were already adequately represented by the Attorney General and we review that determination de novo. The Proposed Intervenors and the Attorney General claim that the denial was error and that intervention was necessary to allow the Proposed Intervenors to assert their constitutionally protected rights of free exercise of religion and free speech. However, the only issue before the court is the validity of the School Prayer Statute and the Attorney General, in defending that statute, can assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors. The Attorney General undoubtedly affords the Proposed Intervenors' interests adequate representation.
 
 
 28
 The denial of permissive intervention was also appropriate because the Proposed Intervenors bring no new issues to this action. The abuse of discretion standard of review for such a denial is "exceedingly deferential" to the district court, and "this circuit has never reversed a denial of permissive intervention." Doe I, 994 F.2d at 168 n. 10 (citation omitted). The district court's conclusion that the Proposed Intervenors would bring only delay to this action was not plain error.
 
 Conclusion
 
 29
 The district court did not abuse its discretion in preliminarily enjoining the enforcement of the School Prayer Statute. Ingebretsen's claim showed a substantial likelihood of success on the merits, irreparable harm, more harm from the new law than from the injunction and that the injunction served the public interest. The district court also decided correctly to deny intervention on the ground that the Proposed Intervenors are adequately represented by the Attorney General. The Attorney General's argument for the statute on appeal is grounded almost entirely on the First Amendment rights of students. The Proposed Intervenors do not assert that students have any rights that the Attorney General has not also asserted in support of the statute. The district court's denial of permissive intervention was proper for the same reasons: Proposed Intervenors would add nothing to this action except additional parties.
 
 
 30
 For these reasons, the district court's orders enjoining the enforcement of the School Prayer Statute except as to nonsectarian, nonproselytizing student initiated voluntary prayer at high school commencement as condoned by Jones II and denying AFALC's motion for intervention are AFFIRMED.
 
 
 31
 AFFIRMED.
 
 ON SUGGESTION FOR REHEARING EN BANC
 
 32
 (Opinion 1/10/96, 5 Cir., 1996, 88 F.3d 274)
 
 May 31, 1996
 
 33
 Before DAVIS and PARKER, Circuit Judges, and BUNTON,* District Judge.
 
 PER CURIAM:
 
 34
 Treating the Suggestion for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The Court having been polled at the request of one of the members of the Court and a majority of the Judges who are in regular active service not having voted in favor (FRAP and Local Rule 35), the Suggestion for Rehearing En Banc is DENIED.
 
 
 35
 For reasons to be assigned, Circuit Judge EDITH H. JONES dissents from refusal to grant rehearing en banc.
 
 
 36
 Circuit Judge GARWOOD and Circuit Judge PATRICK E. HIGGINBOTHAM did not participate in the consideration of the suggestion for rehearing en banc.
 
 DISSENT FROM DENIAL OF REHEARING EN BANC
 
 37
 EDITH H. JONES, Circuit Judge, with whom E. GRADY JOLLY, JERRY E. SMITH, RHESA HAWKINS BARKSDALE, EMILIO M. GARZA and DeMOSS, Circuit Judges, join, dissenting:
 
 
 38
 The First Amendment says Congress shall make no law respecting an establishment of religion, and under Supreme Court rulings, the Amendment has come to mean that states shall make no such laws. The First Amendment, in other words, limits government action that creates an establishment of religion. But the Supreme Court has never held that students may not express their private religious convictions by means of appropriate voluntary prayer in school. In overturning the Mississippi school prayer statute, leaving a sliver of liberty for student-initiated graduation ceremony prayers, the Fifth Circuit has transformed the Establishment Clause from a shield against government religious indoctrination to a sword attacking personal religious behavior.
 
 
 39
 Just as unfortunate as the court's invasion of civil liberty is its misapplication of traditional doctrines of judicial restraint to achieve that result. The court had no warrant either to adjudicate a case in which plaintiffs have not been injured and cannot assert a justiciable controversy, or to decide the facial constitutionality of this statute. Sadly, this exercise of judicial boldness may be explained, though it cannot be justified, by the lack of guidance from the Supreme Court's Establishment Clause jurisprudence. The Court's decisions in this area more closely resemble ad hoc Delphic pronouncements than models of guiding legal principle. It is no wonder lower courts and the public are led adrift and astray. Religious liberty has invariably been the victim of the uncertainty. From the Fifth Circuit's refusal to rehear this case en banc, I respectfully dissent.
 
 
 40
 I. The Statute and its Treatment by the Panel
 
 
 41
 The Mississippi School Prayer Statute aimed at enabling the conduct of voluntary, student-initiated prayer in connection with public schooling. The statute states as its purpose:
 
 
 42
 ... to protect the freedom of speech guaranteed by the First Amendment to the United States Constitution, to define for the citizens of Mississippi the rights and privileges that are accorded them on public school property, other public property or other property at school-related events; and to provide guidance to public school officials on the rights and requirements of law that they must apply. The intent and purpose of the Legislature is to accommodate the free exercise of religious rights of its student citizens in the public schools and at public school events as provided to them by the First Amendment to the United States Constitution and the judicial interpretations thereof as given by the United States Supreme Court.
 
 
 43
 1994 Miss.Laws Ch. 609, § 1(1). Without otherwise limiting the free exercise of religion and speech (Section 1(3)), the statute permits:
 
 
 44
 [o]n public school property, other public property or other property, invocations, benedictions or nonsectarian, nonproselytizing student-initiated voluntary prayer ... during compulsory or noncompulsory school-related student assemblies, student sporting events, graduation or commencement ceremonies and other school-related student events.
 
 
 45
 The statute disclaims state support, approval or sanction of any prayer or similar activity that occurs on public property, and it disavows the promotion or establishment of any religion or religious belief. Id. at § 1(4). A severability clause seeks to protect the bulk of the statute to the extent any of its provisions is held invalid or unconstitutional. Id. at § 1(5).
 
 
 46
 There is no doubt of the breadth of this statute, and notwithstanding its disclaimer, the vulnerability of some of its aspects to constitutional challenge. Whether, for instance, participation in student-initiated prayer could be imposed on unwilling students in a "compulsory" setting may be dubious. Compare Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). But to admit a potential for unconstitutional application is not to condemn the entire statute.
 
 
 47
 Any simplistic description of the statute's operation is belied by the daunting variety of activities daily undertaken on school property. Students gather before, during and after school, at lunch, in activity rooms or on the field, for all sorts of curricular, extracurricular and quasi-curricular events. Testimony in this case listed a few of the types of assemblies alone: scholastic achievement assemblies, beauty pageants, guest speakers, programs, athletics, matters initiated by students, PTA, civic clubs, Boy Scouts, pep rallies. Precisely because the initiation of voluntary student prayer rests with students rather than school administrators, and because federal courts never permitted the law to take effect, there was no evidence in the district court as to how or when the statute might be invoked.
 
 
 48
 Rather than admit that construing this statute depends upon private, not state action, the Fifth Circuit found guilt by mischaracterization. Relying on conclusional statements of school officials and the "enormous interest in prayer" related to the Bishop Knox suspension,[1] the court declares, "[i]mplementation of the statute would inevitably lead to improper state involvement in school prayer" and would require school officials "to decide who prays" and to monitor prayers' content. Ingebretsen v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir.1996). The court assumes that prayers may even be given by teachers, administrators or clergy, that attendance will be compulsory and non-attendants punished. Id. at 279. These conclusions are not based on any facts but solely on predictions and hypotheticals spawned by a broadly drafted statute.
 
 
 49
 Once the panel accepted this mistaken impression of state control over the prayers, its result was predictable. The panel deployed three "tests" that the Supreme Court has used to determine the parameters of the Establishment Clause. Although one of these tests has been repeatedly discredited but not overruled,[2] and the other two have never been fully adopted or explained,[3] they were deemed sufficient to the panel's task of holding the school prayer statute qua "state prayer statute" unconstitutional.[4] Unfortunately, its blow struck not just the mythical ogre of state-sponsored prayer but the sincere, praiseworthy desire of students to join in prayers of their own making.
 
 
 50
 II. Case or Controversy Limits--Standing/Ripeness
 
 
 51
 The panel first went wrong by concluding that the plaintiffs had standing to sue to invalidate the school prayer statute. Standing is the Article III case or controversy requirement that a plaintiff assert injury in order to sue in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The doctrine of standing implements a fundamental principal of judicial restraint.[5] As Justice Powell observed, "relaxation of standing requirements is directly related to the expansion of judicial power." United States v. Richardson, 418 U.S. 166, 188, 94 S.Ct. 2940, 2952, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).
 
 
 52
 A court's decisions are hypothetical or advisory if a case presents no injury to repair. Dispense with injury, and judges may be advisors or revisers of the legislature, but they are no longer deciding live cases or controversies. Their role has expanded, their jurisdiction has drastically increased if the standing requirement diminishes.
 
 
 53
 In three ways, one could assert "injury" to the plaintiffs who sued to invalidate the Mississippi school prayer statute. Although neither the plaintiffs nor the court relied on two of the assertions, they illuminate the evanescence of the notion of injury employed by the court.
 
 
 54
 First, some of the plaintiffs are parents and students in Jackson, Mississippi public schools. Status alone, however, hardly connotes injury.[6] A plaintiff must be so situated to the constitutional violation as to have suffered real and immediate injury, traceable to the defendant's conduct.[7] In consequence, no parent ought to be allowed to sue over a school policy with which he disagrees unless the policy has demonstrably injured him or his child. Recognizing the frailty of this position, plaintiffs did not assert that their status alone conferred standing.
 
 
 55
 Second, the panel found standing because the statute makes "inappropriate government involvement in religious affairs inevitable." Ingebretsen, 88 F.3d at 278 (quoting Karen B. v. Treen, 653 F.2d 897, 902 (5th Cir.1981), affirmed, 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982)). Inevitability, like status, may suggest incipient injury, but it does not reflect an extant fact of injury. Moreover, this conclusion of inevitability reflects the panel's confusion of student-initiated prayers with state-controlled prayers. The Mississippi prayer statute authorizes but does not compel voluntary student-initiated prayer, and it expressly provides that it is to be construed consistent with First Amendment law. It is impossible to predict when or how the statute might be invoked by students. Because the statute never went in effect, no one testified how students would react to it. The school district had set no policies for its implementation, although contrary to the panel's earlier assertion, the district already forbade teachers from leading or organizing prayers and would not compel dissenting students to remain present.
 
 
 56
 Refuting both the status theory and inevitability theory of injury, this court has held that a plaintiff who was not an elementary student in a public school district could not attack the district's alleged policy authorizing Gideon Bible distribution in elementary schools. Doe v. Duncanville ISD, II, 70 F.3d 402 (5th Cir.1995).[8] Standing is not ordinarily, and is certainly not in this case, an arcane concept. The panel's fear that national publicity surrounding the Bishop Knox controversy would inspire a proliferation of student prayers under the new statute may or may not be valid, but fear of exposure to student-initiated prayers in the future is simply not injury.[9]
 
 
 57
 A third concept of standing, previously articulated only in First Amendment free speech cases, attributes injury to a plaintiff's allegation that he intends to engage in protected speech or expressive conduct that may violate a statute. City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Relatedly, he may assert he is injured because the existence of the allegedly unconstitutional ordinance deters or chills the exercise of free speech rights and causes either continuing harm or a real and immediate threat of future injury. For obvious reasons, plaintiffs asserted neither type of injury in this case. Their free speech rights were unaffected by a policy that allows voluntary, student-initiated speech which happens to be prayerful.
 
 
 58
 On the contrary, the real chilling effect of the federal court's injunction falls upon students who have now been deterred from exercising their constitutional rights of free speech, assembly and religious practice in conjunction with school events.
 
 
 59
 One other way to look at the justiciability of this case is to say that the controversy is not ripe until allegedly unconstitutional regulations are promulgated under the statute or unconstitutional prayer occurs or is actually scheduled to occur. See 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3532.1 (1984) (ripeness serves "the central perception ... that courts should not render decisions absent a genuine need to resolve a real dispute"). The court was unwilling to let events take their course under the statute and trust to the good will of students and school administrators to implement it properly.
 
 
 60
 Whether the panel reached the "right" decision on some imagined exegesis of the statute is not the issue for justiciability purposes. Rather, the question is whether these plaintiffs suffered or are in imminent danger of themselves suffering injury from the mere existence of the statute, as opposed to its particular application in the future. These plaintiffs did not sufficiently demonstrate injury. The case did not present a factual, specific dispute. The court thus acted as advisor or reviser, not as adjudicator, and rendered its decision based on a wholly hypothetical, "worst-case" scenario about the application of the statute.
 
 III. Standard of Facial Invalidity
 
 61
 As it treated the question of standing, so the panel summarily opted for the jurisprudential approach of striking down the Mississippi school prayer statute on its face, in toto, rather than deferring a constitutional law decision until the statute has actually been applied. Facial constitutionality analysis was justified in a footnote with two citations. Ingebretsen, 88 F.3d at 279 n. 2. In my view, this technique misfires because plaintiffs cannot plausibly maintain that there is "no set of circumstances" under which the statute may be constitutionally applied.
 
 
 62
 The reasons for a distinction between facial and "as applied" challenges--and for a court's disavowing promiscuous declarations of facial invalidity--seem obvious. Courts owe heavy deference to legislative enactments and to the presumption that legislators can independently gauge their constitutionality. The doctrine of facial invalidity obtains where no narrowing construction of a statute can save it. United States v. Salerno, 481 U.S. 739, 744, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). In First Amendment free speech cases, declarations of facial invalidity have been more frequent, although still imposed cautiously, because of the chilling effect such laws might have on free expression, an effect not claimed by plaintiffs here. Id. Even in an abortion case, this court has refused to declare a statute facially unconstitutional. Barnes v. Mississippi, 992 F.2d 1335, 1342 (5th Cir.), cert. denied, 510 U.S. 976, 114 S.Ct. 468, 126 L.Ed.2d 419 (1993).[10]
 
 
 63
 Establishment Clause cases do not deviate from this rule of judicial restraint. There is precedent for both facial and as-applied challenges to statutes on Establishment Clause grounds, but the Supreme Court has acknowledged that it has not delineated the consequences of those two approaches. Bowen v. Kendrick, 487 U.S. 589, 602, 108 S.Ct. 2562, 2570, 101 L.Ed.2d 520 (1988). Bowen, however, upheld on its face the Adolescent Family Life Act, which permitted federal funding of religious organizations for adolescent sexual counseling. The Court remanded for a more discriminating consideration of the statute's validity as applied. Significantly, in other cases where the Court has held statutes facially to represent an unconstitutional establishment, there was no room for a narrowing construction; each such statute dictated the state's unconstitutional involvement with religion.[11]
 
 
 64
 In contrast with statutes susceptible to no narrowing construction, the essence of the School Prayer Statute, even more than in Bowen, is the manifold variety of its possible constructions and applications. The amount and type of state involvement with voluntary student prayer is unforeseeable because invocation of the statute depends not on the state but on private students. It would be ludicrous to assert, and the panel did not attempt to do so, that there "is no set of circumstances" under which the Mississippi prayer statute can be upheld. Salerno, supra. In fact, the court conceded the statute's validity as applied to graduation prayers pursuant to Jones v. Clear Creek ISD, 977 F.2d 963 (5th Cir.1992), cert. denied, 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993), and it must be constitutional to facilitate student prayer as permitted in Doe v. Duncanville II, supra.
 
 
 65
 Critically, holding the statute not facially invalid or deferring consideration of facial validity is a different matter than facially upholding it across the board in every possible way. Only experience with the statute would tell whether it fulfills the promise of empowering student-initiated free speech/free exercise of religion or is misused to compel state-sponsored prayer. The panel's decision to strike down the entire statute preemptively expanded its authority at the expense of the legislature and unwarrantedly limited the legislature's flexibility to run Mississippi's schools.
 
 IV. Why This Case Matters
 
 66
 This case matters because it breaches the limits of judicial authority to achieve results that are offensive to religious liberty and the sound upbringing of our children. The panel's departures from standard rules of judicial restraint have been explained above. It has long been thought prudent, indeed obligatory, for a court to avoid discussing difficult but unnecessary constitutional issues. Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). Here, neither plaintiffs' lack of standing nor trepidation over a premature declaration of facial invalidity persuaded the panel to forebear.
 
 
 67
 But beyond the errors of judicial craft lies a deeper significance. The panel's decision is the latest in a long line of cases whose inevitable consequence has been to remake society in a secular image. Two examples suffice: courts have held that the mere existence of a Good Friday holiday "establishes" the Christian religion,[12] and the venerable inscription on a courthouse "The World Needs God" likewise constitutionally offends ... someone.[13] Only by recognizing the absurdity of holding otherwise have courts allowed us still to pledge that we are "one nation under God, indivisible" and to maintain "In God We Trust" on the currency. When our cultural heritage and tradition, indeed the three-millennial history of the Western world threatens to be erased by three decades of federal court pronouncements, something is amiss.[14] As Prof. Stephen Carter arrestingly concluded, our elite cultural institutions, including federal courts, have imposed on us an historically unprecedented "culture of disbelief."[15]
 
 
 68
 The elites' tin ear for religious belief and practice has been particularly evident in cases regarding the public schools. Federal courts often seem unable to draw fundamental distinctions between school-sponsored religious "establishment" and benign teaching about religion or, as in this case, students' constitutionally protected free exercise of speech and religion.[16] School officials, averse to the emotional and financial costs of litigation, have systematically excised religious references from school curricula and activities in response to the caselaw. This widespread Establishment Clause misconstruction occurs notwithstanding that Supreme Court justices have repeatedly acknowledged the importance of teaching about religion in public schools[17] and that no Supreme Court authority limits students' nondisruptive religious self-expression. Not to belabor the point, I note that Congress passed and the Supreme Court upheld the Equal Access Act, a law guaranteeing students' rights to meet in religious clubs on public school property, in order to overturn lower federal court decisions to the contrary.[18] Only last summer, President Clinton spoke of the problem of hostility to religion in public schools and instructed the Departments of Justice and Education to formulate guidelines for the protection of public school students' religious speech and conduct.[19] Every time a federal court writes an unduly broad Establishment Clause decision concerning public schools, we encourage further misunderstandings, to the detriment of students' constitutional rights and the goal of teaching about religion in public schools.
 
 
 69
 The courts' broad decisions in this area are not only in my view, uncompelled by precedent, they are also extraordinarily shortsighted. Decisions fostering rigidly secular public education strip school officials of moral tools that lie at the heart of the educational process. As the Rev. Martin Luther King explained:
 
 
 70
 The function of education, therefore, is to teach one to think intensively and to think critically. But education which stops with efficiency may prove the greatest menace to society. The most dangerous criminal may be the man gifted with reason but with no morals.
 
 
 71
 We must remember that intelligence is not enough. Intelligence plus character--that is the goal of true education.
 
 
 72
 THE WORDS OF MARTIN LUTHER KING, JR. 41 (ed. Coretta Scott King) (1993). Character education, whose roots lie deepest and firmest in precepts of religious morality, has been the ultimate casualty of the courts' careless Establishment Clause jurisprudence.
 
 
 73
 Eager judicial intrusions into the educational process have also spawned decrees that inhibit school leaders' flexibility to accommodate varying social conditions. Intuitively, it appears that different approaches are required to encourage educational success, including character building success, in a Chicago ghetto, a Dallas suburb or a small Tennessee town. Yet local control of schools, a cornerstone of American public education, has had to give way to a growing body of federalized, nationally binding Establishment Clause jurisprudence.
 
 
 74
 Paraphrasing George Orwell, we have sunk to the point at which it becomes one's duty to restate the obvious. What seems obvious to me is that disputes like these, deeply enmeshed in social and political policy, are not well handled by the adjudication process. Court decrees, focused on the single goal of pure "non-establishment," supplant decisions based on compromise and consensus which reflect the multifaceted wisdom of the people acting through democratically accountable elected officials and educators. Moreover, the accumulated precedential effect of the courts' secularizing decisions has stretched beyond each particular dispute to discourage and thwart moral and religious elements in public education.[20] It is precisely because of the tension between adjudicative decisionmaking and well-rounded social policy-making that courts fashioned self-constraints on declarations of facial unconstitutionality. It is because the Founders recognized the distinction between mere adjudication and lawmaking that Article III requires a real case or controversy, implicating standing to sue, ripeness and justiciability. A forthright sense of judicial modesty also compels such limitations on the judicial process. Neither judicial modesty nor principles of judicial restraint have been notably evident in decisions involving religion and the public schools.
 
 
 75
 This case, striking down Mississippi's attempt to accommodate students' desire--and constitutional right--voluntarily to pray aloud at school, is a paradigm of the errors that bedevil Establishment Clause jurisprudence. The court reached out to condemn the entire statute on its face even though no plaintiff had been injured or could realistically assert standing, and even though certain constitutional applications of it are mandated by our caselaw. The court's decision was premised not on actual facts but upon a hypothetical, worst-case application of the statute. The court dealt unsympathetically, to say the least, with the motivation for the statute, a motivation shared by the vast majority of the American people that life is more meaningful, education more dignified, morality fortified when voluntary, student-initiated prayer is permitted. It was not the court's prerogative under traditional principles of judicial restraint to strike down this statute. I DISSENT from the denial of rehearing en banc.
 
 
 
 [1]
 District Judge of the Western District of Texas, sitting by designation
 
 
 [2]
 The Attorney General also argues that Ingebretsen has not met his burden of showing that the statute is facially invalid. However, in establishment clause cases facial attacks are considered under the Lemon test and the Supreme Court has refused to draw distinctions between facial and "as applied" attacks. See Bowen v. Kendrick, 487 U.S. 589, 601-02, 108 S.Ct. 2562, 2569-70, 101 L.Ed.2d 520 (1988); Edwards v. Aguillard, 482 U.S. 578, 581, 583, 107 S.Ct. 2573, 2576-77, 96 L.Ed.2d 510 (1987). The above discussion demonstrates the invalidity of this statute under Lemon
 
 
 *
 District Judge of the Western District of Texas, sitting by designation
 
 
 [1]
 Bishop Knox was the school principal who was briefly suspended for allowing students to recite a brief morning prayer over the intercom. The case received national press attention and created a big stir in Jackson
 
 
 [2]
 See the "Lemon test," from Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), nominally applied in Lamb's Chapel v. Center Moriches Sch. Dist., 508 U.S. 384, 395 & n. 7, 113 S.Ct. 2141, 2148 & n. 7, 124 L.Ed.2d 352 (1993). Justice Scalia noted in a separate Lamb's Chapel opinion that six members of the Supreme Court as of 1993 had seriously criticized Lemon. Id. at 398, 113 S.Ct. at 2150 (Scalia, J., concurring in judgment)
 
 
 [3]
 The panel referred to the "coercion test," Lee v. Weisman, supra, and the "endorsement test," County of Allegheny v. ACLU, 492 U.S. 573, 594, 109 S.Ct. 3086, 3100-3101, 106 L.Ed.2d 472 (1989)
 
 
 [4]
 If it were necessary, I would take issue with the panel's interpretation of the Supreme Court's establishment clause "tests". Criticizing the substance of this decision is beside the point, however, because as explained above, the panel should never have reached difficult substantive establishment clause issues
 
 
 [5]
 See, e.g., Society of Separationists v. Herman, 959 F.2d 1283 (5th Cir.) (en banc) (Higginbotham, J.), cert. denied 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992); National Treasury Employees Union v. Department of Treasury, 25 F.3d 237, 240-41 (5th Cir.1994); Henschen v. City of Houston, 959 F.2d 584 (5th Cir.1992)
 
 
 [6]
 There is a doctrine of taxpayer standing in Establishment Clause cases, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), but that is not at issue here
 
 
 [7]
 Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); Cramer v. Skinner, 931 F.2d 1020 (5th Cir.), cert. denied, 502 U.S. 907, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991)
 
 
 [8]
 See also, O'Hair v. Hill, 641 F.2d 307, 310 (5th Cir.1981) (without suffering actual injury, plaintiffs had no standing to make a First Amendment challenge to a provision of the Texas Constitution)
 
 
 [9]
 The panel supported its "inevitability" theory of injury by relying on Karen B. v. Treen, 653 F.2d 897 (5th Cir.1981), affirmed, 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982), but that is an entirely different case. In Karen B., teachers were authorized to seek volunteers to pray in regular classes every day and failing any volunteers to offer prayer themselves; they were also required to monitor the prayers. Id. at 902. Thus, the existence of prayer sponsored by the school was a foregone conclusion. Here, whether prayers will occur at all depends not on the school but on student, i.e. private initiative. The nature and form of prayer requests is no more foreseeable than requests by FFA or Junior Achievement to speak at school assemblies or over the public address system
 
 
 [10]
 But compare Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452 (8th Cir.1995), cert. denied, Janklow v. Planned Parenthood, Sioux Falls Clinic, --- U.S. ----, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (holding contra Barnes and Justice Stevens's concurrence to the denial of certiorari in Janklow v. Planned Parenthood, Sioux Falls Clinic, --- U.S. ----, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996), with Justice Scalia's dissent from denial of certiorari in that case. Id
 
 
 [11]
 See, e.g., Edwards v. Aguillard, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (holding Louisiana "Creationism Act" facially invalid); Wallace v. Jaffree, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985)
 
 
 [12]
 Metzl v. Leininger, 57 F.3d 618 (7th Cir.1995)
 
 
 [13]
 Doe v. County of Montgomery, IL., 41 F.3d 1156 (7th Cir.1994)
 
 
 [14]
 The inconsistency in application of the establishment clause filters down to the parchment commissions for Article III judges, each of which was signed "In the Year of Our Lord."
 
 
 [15]
 Stephen L. Carter, THE CULTURE OF DISBELIEF: HOW AMERICAN LAW AND POLITICS TRIVIALIZE RELIGIOUS DEVOTION (1993)
 
 
 [16]
 See, e.g., Hedges v. Wauconda Comm. Unit Sch. Dist. No. 118, 9 F.3d 1295 (7th Cir.1993) (appeals court overturns lower court decision prohibiting eighth grade student from distributing religious pamphlets); Mozert v. Hawkins County Bd. Educ., 827 F.2d 1058 (6th Cir.1987), cert. denied, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988) (parents may not remove children from class with religiously offensive reading materials); Settle v. Dickson County Sch. Bd., 53 F.3d 152 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995); Hsu v. Roslyn Union Free Sch. Dist. No. 3, 876 F.Supp. 445 (E.D.N.Y.1995) (student Bible club could not reject non-believers as officers), aff'd in part and rev'd in part, 85 F.3d 839 (2d Cir.1996) (appeals court overturns lower court decision holding that student Bible club could not reject non-believers as officers)
 
 
 [17]
 Edwards v. Aguillard, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); School Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)
 
 
 [18]
 Equal Access Act, 20 U.S.C. §§ 4071-4074; Board of Education v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)
 
 
 [19]
 See President's Directive to the Education Dept., and News Release of U.S. Dept. of Education, Aug. 17, 1995. The Directive states that the President "share[s] the concern and frustration that many Americans feel about situations where the protections accorded by the First Amendment are not recognized or understood." President Clinton instructed the Departments of Justice and Education "to provide school officials with guidance [concerning] the extent to which religious expression and activities are permitted in public schools."
 
 
 [20]
 Jones v. Clear Creek ISD, supra, authorizing voluntary, student-initiated graduation prayer; Doe v. Duncanville ISD, II, supra authorizing voluntary student sports prayers